**TEEL et ux. v. TEEL.**

No. 3677.

Court of Civil Appeals of Texas. Beaumont.

June 4, 1940.

Rehearing Denied June 12, 1940.

A. A. Dawson, of Canton, for appellants.

Wynne & Wynne, of Wills Point, for appellee.

O'QUINN, Justice.

This is a suit in trespass to try title to 100 acres of land situated in Van Zandt County, Texas, brought by J. S. Teel against S. M. Teel and his wife, Ione Teel, to recover the title and possession of said land. Appellants answered by general demurrer, general denial and plea of not guilty. The case was tried to a jury, but at the close of the evidence both parties filed motion for an instructed verdict. Appellee's motion was granted, and, in accordance with such instruction, the jury returned a verdict for appellee, and judgment was entered in his favor for the title and possession of the land. From that judgment this appeal was taken.

It was agreed that one J. W. Hubbard was the common source of title. Plaintiff, appellee, offered in evidence a deed from Hubbard, the common source, to S. M. Teel, dated November 12, 1917, which deed retained a vendor's lien on the land conveyed to secure the payment of a purchase money note in the sum of $2,800, dated November 12, 1917, executed by S. M. Teel, and payable to J. W. Hubbard on December 1, 1917. Appellee also offered in evidence a deed of trust of date October 19, 1928, covering the land, executed by S. M. Teel and his wife, Ione Teel, to E. H. White, trustee, for the benefit of appellee, which recited that appellee was the owner and holder of four vendor's lien notes, three for the sum of $200 each, and one for $334.40, due respectively on October 19, 1929, 1930, 1931, and 1932, given in renewal and extension of the balance due and unpaid on said $2,800 note, said renewal and extension being granted at the request of appellants. Appellee then offered in evidence a general warranty deed of date November 23, 1933, from appellants to him conveying the land involved, reciting as its consideration the four vendor's lien notes given by appellants in renewal and extension of the original note given in part payment for the land, mentioned above, of which four notes appellee was the owner and holder.

Appellants contend, and it is their sole contention, that the deed of November 23, 1933, executed for the recited consideration of their four notes given in extension and renewal of the original vendor's lien note, was intended as a mortgage to secure the payment of the four notes mentioned, and that there was a contemporaneous agreement between the grantors (appellants), and the grantee (appellee) that at any time within five years from the date of the deed, the grantors

could repurchase the land by paying to appellee the amount of the notes. Appellant contends that the deed was not intended to be a mortgage to secure the payment of the vendor's lien notes, but that the deed was understood to be and was executed in consideration of the cancellation and discharge of the said notes; that he accepted the deed as payment of and in discharge of said notes, and no longer claimed anything by reason of the notes, but claimed and held the land in full payment of same. Appellee was called as a witness by appellants, and among other things, he testified:

"Q. The matter was finally paid off down to these four notes that is mentioned in this instrument (the deed)? A. Yes, sir.

"Q. And they have not been paid off? A. No, sir.

"Q. They are still due and payable? A. Yes, sir.

"Q. And you still hold the notes? A. Yes, sir.

* * *

"Q. At the time you took the deed you took it to secure you in the payment of the notes, didn't you? A. Sure.

"Q. You held the deed for that purpose? A. Yes, sir.

"Q. And those notes—do you mind if I see them? A. Sure (handing the notes to counsel).

"Q. These are the four notes mentioned in the deed? A. Yes.

"Q. You still hold these, and have ever since they were made to you? A. Yes, sir.

"Q. They were originally made to Teel Brothers, but after the brother's death, they became your property? A. Yes, sir.

"Q. You have held those since they were made? A. Yes, sir.

"Q. And you still hold them? A. Yes, sir.

"Q. And they are still due and unpaid? A. Yes, sir."

On cross-examination, among other things, he testified:

"Q. Who drew this deed? A. I understood that Tom Hubbard drew it.

"Q. Why did he draw the deed? A. To redeem those notes.

"Q. Did you accept this deed then when they brought it back to you and place it of record? A. Yes, sir.

"Q. In cancellation of the notes you had? A. Yes, sir.

* * *

"Q. This is the deed that they gave you to secure your notes on the land? A. To pay those notes.

"Q. If they ever paid the notes, the land was going back to them, and if they didn't, you got the land; that was the five year agreement? A. How is that?

"Q. They gave you this deed reciting those notes, and if they didn't pay you the notes, you got the land? A. No, sir.

"Q. What was the five year agreement, what was that for? A. After they mailed me this—mailed my papers back, Shady came up there, he was calling on me to furnish him some money. I said 'Shady'—

"Q. Wait a minute. I didn't ask you about that. What was that five year agreement that you had in there; what was that? A. If he paid me the money back I had in that deed, I was going to deed it back."

He further testified that after he got the deed that he told appellant S. M. Teel that he (appellee) did not want the land, and that he was going to rent the land to him (S. M. Teel) and that if he (S. M. Teel) would get up the money that he owed on the notes within five years and pay it to him, that he would deed the land back to him; that he did rent the land to appellant and received the rent regularly for same.

When appellant, S. M. Teel, was testifying, he was asked by counsel for appellants relative to the deed in question, "What was the purpose of that deed?" Counsel for appellee objected to the question for the reason that the deed showed on its face what it was, recited its contractual consideration, and that it could not be varied by any oral agreement or evidence made prior to its execution. To this objection counsel for appellants replied that parol testimony was admissible to show the true consideration for and the nature of the instrument. The court sustained the objection. The witness (appellee) further testified that after he got the deed that he told appellant (S. M. Teel) that he did not want the land, and that he was going to rent the land to him, and that if he would get up the money that he owed on the notes within five years that he (appellee) would deed the land back to him; that he did rent the land

to appellant, and received the rent regularly for .same.

Appellant S. M. Teel testified that he and his family had occupied the land involved for some twenty-one years as their homestead; that he and his wife executed the deed to appellee under which he claims title to the land. His counsel propounded to him this question:

"Q. What was the purpose of the deed?

"Mr. W. J. Wynne: If the court please, asking what the purpose of it is, the deed is in writing; it shows on its face what it is, and the consideration recited is contractual. He couldn't vary it by any agreement made prior to its execution, or statements.

"Mr. Dawson for appellant: I can vary the terms of it by showing the purpose, to show the true nature of it.

"Mr. Wynne: Where it is contractual?

"The Court: The purpose of the deed should be declared in its face.

"Mr. Dawson: It can be varied by parol testimony to show what its true purpose was.

"The Court: I will have to sustain the objection.

"Mr. Dawson: We except."

We think the record discloses that the purpose of the question was to sustain appellants' contention that the deed was intended to be a mortgage given to secure the payment of the notes, with five years extension of time in which to make the payments. He testified at considerable length as to other matters. Relative to appellee's testimony that he rented the land to appellant and received the rent regularly, he testified:

"A. We had an agreement in that written (an oral and or written agreement made about the time of the execution of the deed in question leading to its execution) that I was to let him have it, and I was to pay him for it.

"Q. So the jury will understand, let him have what? A. Let him have the rent in place of the interest.

"Q. Just tell what the provisions of the instrument were? A. It was provided in there that he was to take the rent in place of the interest, and he was to take the taxes out of that, and also I had any time in five years to take this up.

"Q. Take what up? A. Take up the deed. He was to deed it back to me—or the notes, whichever it was.

* * *

"Q. What was the oral agreement that you had at the time this written instrument you have testified about was made? A. About the same thing.

"Q. Just tell the jury what that oral agreement was? A. Well, I was to pay him the rent in place of the interest, and he was to pay the taxes, and I was to pay it off at the amount of the notes, it would be no more, any time in five years.

"Q. You say to pay him rent after what? Beginning when? A. 1932—or '33.

"Q. Did you execute any papers under that agreement? A. No sir—yes sir, I executed some papers under that agreement.

"Q. What did you execute, you and your wife, if anything, under that agreement? A. My wife didn't sign any agreement; just me.

"Q. Did she sign the deed? A. Yes, sir, we signed the deed.

"Q. Was this deed made in pursuance to that agreement? A. Yes, sir."

There was also evidence that appellee joined with appellant, S. M. Teel, to negotiate a loan from the Federal Land Bank to be secured by a lien on the land in controversy as the property of appellant. However, this was not concluded. Appellee agreed to accept the money derived from this attempted loan in payment of the amount owed by appellant on the notes.

It is believed that the evidence above stated raised the fact issue of whether the deed executed to appellee by appellants was intended as a mortgage to secure the payment of the notes mentioned in the deed, and so the issue should have been submitted to the jury. The court directed the verdict. This was error.

But it is contended by appellee that oral testimony was not admissible to vary the terms of the deed, and particularly so since appellants did not specially plead that the deed was intended as a mortgage; there was no pleading upon which to base the evidence. We overrule this contention. The evidence was admissible under appellants' plea of not guilty. It is well settled that parol evidence is admissible to prove that a deed, absolute upon its face, was made and intended as

a mortgage to secure the payment of a debt, and no special pleading is necessary for its admission. Mann's Ex'x v. Falcon, 25 Tex. 271, 275. We are cited to the recent case of King v. Hill, Tex.Civ. App., 136 S.W.2d 632, as being directly in point supporting appellee's contention, and so controlling. The cited case does support appellee's contention, but it is in conflict with the Supreme Court on this identical question, in Mann's Ex'x v. Falcon, supra, where the supreme court said: "The doctrine that parol evidence is admissible to prove that a deed, absolute upon its face, was made and intended as a security for debt, and is therefore a mortgage, is too well settled to require the support of a reference to authorities. It is also settled by the repeated decisions of this court, that, under the plea of 'not guilty,' in the action of trespass to try title, the defendant may give in evidence any special matter of defense to the action, whether legal or equitable. In order to admit evidence of such matter of defense, it is not necessary for the defendant to plead it specially." The supreme court on March 20, 1940, granted a writ of error against the holding in King v. Hill.

For the error pointed out, the judgment must be reversed and the cause remanded for another trial, and it is so ordered.

Reversed and remanded.